Edward Baum and Bertha F. Baum v. Commissioner.
Baum v. Commissioner
Docket No. 45813.
United States Tax Court
T.C. Memo 1954-146; 1954 Tax Ct. Memo LEXIS 101; 13 T.C.M. (CCH) 853; T.C.M. (RIA) 54252; August 31, 1954, Filed *101 Petitioner was an officer, director and majority stockholder of Janice Shoe Company, Inc. In 1946, the company issued its note for $15,067.10, representing the unpaid portion of a bonus voted to petitioner. The note was never paid. From February 8, 1949, to June 23, 1949, petitioner made loans totaling $25,850 to the company. On October 26, 1949, Janice Shoe Company, Inc. made an assignment for the benefit of its creditors. Petitioner had made occasional loans to corporations and individuals in the past. On the facts, held: Petitioner was not entitled to a business bad debt deduction under section 23(k)(1) of the Internal Revenue Code of 1939. Paul A. Gorin, Esq., 31 State Street, Boston, Mass., for the petitioners. R. Monroe Schwartz, Esq., for the respondent. VAN FOSSAN Memorandum Findings *102 of Fact and Opinion The Commissioner determined deficiencies in the income tax of petitioner in the following years and amounts: Year
Tax
Deficiency
1947
Income
$8,316.83
1948
Income
2,759.00
1949
Income
1,159.00
The only issue is whether certain loans made by Edward Baum to Janice Shoe Company, Inc., a corporation, are deductible as a loss from a business bad debt. Findings of Fact The facts were all stipulated, are so found and are incorporated herein by this reference. Petitioners, husband and wife, are individuals residing in Lynn, Massachusetts. They filed joint Federal income tax returns for the taxable years 1947, 1948, and 1949 with the collector of internal revenue for the district of Massachusetts. Edward Baum (hereinafter referred to as Edward or as the petitioner) established a tobacco business in 1914 and continued to operate this business as a sole proprietorship through 1949. The Janice Shoe Company, Inc. (hereinafter referred to as Janice) a Massachusetts corporation, was organized in 1936 and had its principal office in Lynn, Massachusetts. The company was engaged in the business of manufacturing and selling shoes at wholesale. *103 Prior to April 1942, the capital stock of Janice amounted to $30,200. Edward owned no stock in the company at this time although he had loaned substantial amounts to the company. About April, 1942, all the outstanding capital stock of Janice was transferred to Edward and additional stock, stipulated as being worth $73,500, was issued to him in satisfaction of the indebtedness owed to him by Janice. Thus petitioner became the sole stockholder of the company. In October of 1943 all the stock of Janice was exchanged for two new classes of common stock. The Class A stock was entitled to vote and participate in dividends. All of this class was issued to petitioner. The Class B stock was not entitled to vote, nor to dividends, nor to participate in any way except in a sinking fund. Fifty per cent of all net profits was to go into the sinking fund for the repurchase of the Class B stock. This class was distributed equally to Edward and Joseph B. Logan. The petitioner was the treasurer, principal stockholder, and a director of Janice from September, 1943, until its dissolution on October 26, 1949. In June, 1946, Janice declared a bonus of $20,000 to Edward, $3,532.90 was withheld from *104 the bonus for Federal income taxes, $1,400 was paid in cash, and a note bearing the date September 12, 1946, was given for the balance. This note in the amount of $15,067.10 was due on December 12, 1946, but was never paid. The note bore no interest. Petitioner reported the $20,000 bonus on his 1946 Federal income tax return. In October, 1946, the Manufacturers Central National Bank of Lynn loaned Janice about $40,000 and required the note representing the bonus to be subordinated to its claim. The company suffered financial reverses in 1948 and 1949. It sustained net losses of $109,614.76 and $172,994.70, respectively, for these years and its deficit was $17,479.41 in 1948 and $190,743.25 in 1949. From February through July of 1949, because of financial difficulties, petitioner made loans bearing no interest to Janice as follows: Date
Amount
February 8
$ 250
February 11
3,000
June 1
1,500
June 5
4,200
June 10
5,000
June 16
6,000
June 17
2,500
June 17
1,400
July 23
2,000
Total
$25,850
On October 26, 1949, Janice made an assignment for the benefit of creditors. On August 29, 1950, Edward received $1,636.68 from the assignee in bankruptcy, *105 representing a four per cent distribution to creditors. In 1946, Edward and Joseph Logan organized Elbee Shoe Co., Inc., a Massachusetts corporation, as a sales agency for Janice. Each invested $10,000. Edward loaned Logan $10,000 for this purpose. The loan was never represented by any note, bore no interest and had no maturity date. The record does not show what time, if any, petitioner devoted to the management of this company. Between May, 1928, and January, 1943, Edward made eleven loans to various individuals, evidenced by notes, ranging in amounts from $32.50 to $1,000. Of these, only one loan of $500 is shown to have carried any interest. The parties also stipulated "Edward Baum drew the following [61] checks, on the dates indicated, to the named payees." Thereafter follows a list of dates, check numbers, payees and amounts. On brief, the petitioner contends that these checks represent loans. There is no further evidence to support this contention. Edward and Bertha Baum reported interest income in their Federal tax returns as follows: Year
Interest
1947
$115.00
1948
115.00
1949
441.25
The source of this interest is not identified either in *106 the record or in the tax returns submitted as exhibits. During the years 1947 to 1949, inclusive, Edward received income, other than interest, from the following source: 1947
Source
Amount
Salary: Janice Shoe Company
$10,400.00
Elbee Shoe Co.
10,400.00
Dividends
309.00
Tobacco Business
4,282.17
Total
$25,391.17
1948
Salary: Janice Shoe Company
$10,600.00
Elbee Shoe Co.
10,400.00
Dividends
590.70
Tobacco Business
415.84
Total
$22,006.54
1949
Salary: Janice Shoe Company
$ 9,000.00
Elbee Shoe Co.
500.00
Dividends
59.70
Net Capital Loss
(1,000.00)
Tobacco Business
722.16
Total
$ 9,281.86 [1]
On his Federal income tax returns for 1947, 1948, and 1949, Edward states his occupation to be "Comptroller." The following deductions were shown in Schedule C, Profit (or Loss) From Business or Profession, of the petitioners' 1949 income tax return: Line
Item
Amount
15
Losses
$25,850.00
16
Bad debts
15,067.10
*107 These items represent the 1949 loans to Janice and the unpaid note given for the balance of the 1946 bonus. On April 26, 1950, petitioners filed an application for Tentative Carry-Back Adjustment, under section 3708, Internal Revenue Code, with the collector of internal revenue of the district of Massachusetts. Petitioners alleged the losses suffered were net operating losses occurring in the taxable year 1949. By reason of the allowance of tentative carry-back adjustments, petitioners received refunds for overassessments in the amounts set forth below: Taxable Year
Refund
1947
$8,316.83
1948
2,759.00
The petitioner suffered long-term capital losses in the taxable year 1949 with respect to the worthlessness of the Janice stock and with respect to the sale of stock of the "Comm. Credit Com" amounting to $83,795.69. We make the following ultimate findings of fact. Neither Edward nor Bertha was engaged in the lending business nor in the business of promoting, managing and financing of shoe manufacturing corporations. Opinion VAN FOSSAN, Judge: The sole issue for determination is whether or not money loaned by petitioner to Janice *108 is deductible in 1949 as a loss from a business bad debt under section 23(k)(1) of the Internal Revenue Code of 1939. The respondent denied the deduction on the ground that the debts were not related to any trade or business of the taxpayer and, therefore, could not be a business bad debt under this paragraph. The pertinent parts of the Code are set forth in the margin. Section 23(k)(1)[2] allows a deduction against income for debts which become worthless within the taxable year. The paragraph expressly states it shall not apply to a nonbusiness debt as defined in paragraph (4) of subsection (k) of such Code when the taxpayer is other than a corporation. *109 Paragraph (4) was added by section 124(a) and (d) of the Revenue Act of 1942 and is applicable since the return in dispute is for the taxable year 1949. Section 23(k)(4)[3] provides that a nonbusiness bad debt loss should be treated as a short-term capital loss. A nonbusiness debt is defined as "a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." It is clear that the loans *110 here involved are not securities as defined in paragraph (3). [4] The parties are agreed that the debtor-creditor relationship existed between the petitioner and Janice. This eliminates the theory that the advances were contributions to capital. The issue is squarely presented: Were these debts proximately related to any trade or business in which petitioner was engaged in 1949? Determination of whether or not the activities of a taxpayeri constitute a trade or business is one of fact. Higgins v. Commissioner, 312 U.S. 212; W. A. Dallmeyer, 14 T.C. 1282. The petitioner contends that he was engaged in the business of lending money; that he was frequently called upon to make loans; and that the loans to Janice were proximately related to this business. The evidence does not support the petitioner's contention. *111 From 1943 through 1949, petitioner proved the making of only two loans, apart from the loans to Janice. One was in the amount of $250 at no interest and the other was to a business associate. The second loan, in the amount of $10,000, to Logan, was not made the subject of a note and does not appear to have been at interest. The parties stipulated a long list of checks drawn by petitioner to various payees. On brief, the petitioner argued that these checks represented loans. There is nothing in the evidence to support this argument. The mere existence of a check without further proof does not constitute proof of a loan. The majority of these checks were drawn in 1939 and 1940. Only one check in this list was drawn after 1942 and none after 1946. Even if we accept these checks as evidence of loans, which we cannot do, they would not prove that petitioner was in the loan business in 1949. The petitioner's income tax returns for the years 1947, 1948, and 1949 are in evidence. None of them shows any appreciable amount of interest income. Petitioner did not maintain any office or other place of business for the purpose of lending money. He did not advertise that he was in such a business. *112 His income tax returns do not so show and he did not deduct any expenses pertaining to a loan business. The petitioner subordinated his note from Janice in the amount of $15,067.10 in order that Janice might obtain a loan from the Central National Bank. Under the circumstances, this action would not seem to be the action of one in the loan business. Cf. F. Sitterding, Jr., 20 T.C. 130. Petitioner has cited no case where his theory has been sustained. We conclude that petitioner's loan activity did not constitute a trade or business. The parties have stipulated that the only issue before this Court is whether or not the sum of $40,917.10 representing loans by petitioner to Janice Shoe Company, Inc. is deductible as a loss from a business bad debt in 1949. Petitioner has not proved that the debts to Janice were related to any trade or business. Therefore, we must answer the question in the negative. Decision will be entered under Rule 50. Footnotes
1. This does not take into account the deductions of $25,850 and $15,067.10 which were included in the Profit (or Loss) Schedule from the tobacco business, Exhibit 3-C, as these deductions did not arise from the operations of the tobacco business.↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(k) Bad Debts. - (1) General Rule. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection.↩
3. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(k) Bad Debts. - * * *
(4) Non-Business Debts. - In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩
4. (3) Definition of Securities. - As used in paragraphs (1), (2), and (4) of this subsection the term "securities" means bonds, debentures, notes, or certificates, or other evidences of indebtedness, issued by any corporation (including those issued by a government or political subdivision thereof) with interest coupons or in registered form.↩